USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/14/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN TOBIN, :
                                               Plaintiff, :
:
                     -against- : 17 Civ. 2622 (LGS)
:
THE RECTOR, CHURCH-WARDENS, AND : **OPINION AND ORDER**
VESTRYMEN OF TRINITY CHURCH, IN THE :
CITY OF NEW YORK, :
                                               Defendant. :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Steven Tobin brings this action against The Rector, Church-Wardens, and Vestrymen of Trinity Church, in the City of New York ("Defendant" or "Trinity"), alleging breach of contract, promissory estoppel and violations of the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. §§ 106A, 113(d). Defendant moves to dismiss the Second Amended Complaint (the "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The motion is granted.

**I. BACKGROUND**

       The following facts are taken from the Complaint and accompanying exhibits. *See* Fed. R. Civ. P. 10(c); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). The facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

  **A. Events Prior to the Written Agreement**

       Plaintiff is a visual artist based in Coopersburg, Pennsylvania and the creator of *The Trinity Root*, the sculpture at the center of this action. Trinity, appearing in this action through its

1

Rector, Church-Wardens and Vestrymen, is a religious organization based in New York, New York. Trinity owns *The Trinity Root*, which it commissioned in 2004 and received as a charitable donation in September 2005.

Defendant approved a sketch of the proposed sculpture that Plaintiff had prepared, depicting it in the courtyard of Trinity Church. If the sketch had not been approved, Plaintiff's commission to create the sculpture would have been terminated. The intent, spirit and design of the sculpture were specific to the site.

*The Trinity Root* is "a cast bronze sculpture fifteen feet wide, twenty feet deep and thirteen feet high that weighs more than three tons." It is a full-size reproduction of the root structure and stump of a 100-year old sycamore tree that stood in the churchyard of St. Paul's Chapel (owned by Defendant) until it was toppled during the September 11, 2001, World Trade Center attack. The sculpture's patina contains "actual DNA from victims of the attack that came to rest in soil within St. Paul's churchyard." The sculpture is "composed of hundreds of fragile individual pieces welded together," and required Plaintiff and an expert team of riggers to supervise its transport from Plaintiff's studio to the churchyard. The cost to Plaintiff of creating and installing *The Trinity Root* was more than a million dollars. Plaintiff took out a home equity loan to cover this expense.

**B. The Parties' Written Agreement**

The parties memorialized their agreement regarding *The Trinity Root* in a written contract (the "Agreement") dated August 4, 2004. As relevant here, section 6(a) of the Agreement states:

> Tobin hereby transfers and assigns to Trinity by charitable donation all right, title, and interest to the Sculpture and all materials related thereto (including but not limited to all sketches, photographs and audio-visual footage), including but not limited to the copyright therein, and any cause of action that Tobin may have with respect thereto, in perpetuity throughout the universe, *for use in any manner* and in any media now known or hereafter invented. In the event of any termination of this Agreement, Trinity will own

> the Sculpture, in whatever degree of completion (including but not limited to the sketches), and will have the right to complete, *exhibit and sell the Sculpture if it so chooses*. Tobin grants Trinity the right to use his name, approved likeness and approved biographical information in connection with any and all exploitation of the Sculpture. Tobin understands that Trinity *has not promised the public exhibition* of the Sculpture, and that Trinity may *loan* the Sculpture to third parties as Trinity deems appropriate.

(emphasis added). Section 8(d) states that the Agreement "constitutes the entire agreement between the parties with respect to the subject matter hereof and may only be amended or modified by a written instrument executed by the duly authorized representatives of the parties." The Agreement further states that it will be governed and interpreted in accordance with New York law.

### C. Events after the Agreement

The Trinity Root was installed in the courtyard at Trinity Church, and on September 11, 2005, was dedicated in a public ceremony. During the year preceding the installation, the parties' plans to create *The Trinity Root* were described in numerous publications attached as exhibits to the Complaint.

On August 9, 2004, Plaintiff's manager and communications consultant, Kathleen Rogers, submitted to CBS Sunday Morning a press release stating that *The Trinity Root* "will be permanently sited at the corner of Wall St. and Broadway." Defendant reviewed and approved the press release. On July 6, 2005, *The New York Times* published a story stating that *The Trinity Root* "will be installed and dedicated near ground zero on Sept. 11, becoming the first substantial permanent memorial in the area."

Between August and September 2005, various other publications, including *The Living Church* (a weekly publication for Episcopalians), *National Geographic Magazine* and *The Episcopal News Service* published articles either stating or implying that *The Trinity Root* would

3

be permanently sited in the churchyard. Defendant did not challenge or correct any of these statements.

In May 2015, nearly a decade after the sculpture's installation in the courtyard of Trinity Church, Rogers, on behalf of Plaintiff, contacted Nathan Brockman, Defendant's representative, about restoring the sculpture's patina, using dirt from the St. Paul's churchyard that Tobin preserved for that purpose. Brockman informed Rogers that Trinity Church's new Rector wanted the sculpture removed and asked whether Plaintiff would take it to his studio or relocate it at Defendant's expense. During that conversation, and in a subsequent email to Rogers, Brockman stated that Defendant had no present plans to relocate the sculpture.

On December 11, 2015, Brockman called Plaintiff and told him that Defendant wanted to move the sculpture to Tobin's studio or to a seminary in Connecticut. Plaintiff told Brockman that the sculpture was created to be site-specific, and that it could be damaged if it were cut into pieces or lifted incorrectly. Plaintiff said that he needed to think about it and would call Brockman the following week.

On December 14, 2015, Plaintiff called Brockman and told him that he did not agree to relocate the sculpture because it is site-specific. After Plaintiff said that he planned to bring his children to see the sculpture the following Saturday, Brockman said that Defendant had relocated the sculpture to Connecticut on December 11, 2015, during the night and that it had sustained some damage during the move. In January 2016, Brockman told Plaintiff that he (Plaintiff) could repair the sculpture at his own expense. Around this time, Brockman also told Plaintiff that the sculpture was going to be moved a second time, to another Connecticut location. The Complaint attaches two photographs of several roots that allegedly were broken off the sculpture in the move and quotes Defendant's statement that the sculpture suffered "minor, reparable damage."

4

Plaintiff has not inspected the sculpture, but based on photographs Defendant provided, believes the damage is substantial.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Trs. Of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). In assessing the sufficiency of a complaint, a court may consider documents attached to it or incorporated in it by reference. *See Tannerite Sports, LLC*, 864 F.3d at 247–48.

## III. DISCUSSION

The Complaint alleges claims under VARA and New York law, all of which stem from Defendant's moving *The Trinity Root* from the churchyard in New York to Defendant's property in Connecticut.

### A. Breach of Contract

Defendant moves to dismiss the Complaint's breach of contract claim. Plaintiff did not offer any arguments in opposition. Claims that are not defended may be deemed abandoned, and therefore, this claim is dismissed. *See Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) ("Federal courts have the discretion to deem a claim abandoned when a

defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim.").

### B. Promissory Estoppel

The Complaint alleges promissory estoppel based on Defendant's removing *The Trinity Root* from the Trinity churchyard. Specifically, the Complaint alleges that Defendant made a clear and unambiguous promise, by making and failing to correct public statements, that *The Trinity Root* would be located in the churchyard permanently; that Plaintiff reasonably relied on that promise and that Plaintiff suffered unconscionable injury as a result. This claim fails because the parties' valid written agreement "precludes recovery under the cause[] of action sounding in promissory estoppel . . . which arises out of the same subject matter." *Hoeg Corp. v. Peebles Corp.*, 60 N.Y.S.3d 259, 262 (2d Dep't 2017); *accord Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 816 (2d Cir. 2014) (stating that, in general, under New York law, "a party may not maintain a promissory estoppel claim where the promises on which the claim is based are expressly contradicted by a later written agreement covering the same subject matter" (internal quotation marks omitted)); *Grossman v. N.Y. Life Ins. Co.*, 935 N.Y.S.2d 643, 645 (2d Dep't 2011) (stating that "the existence of valid and enforceable written contracts precludes recovery under the cause[] of action sounding in promissory estoppel . . . .").

The merger clause also bars the promissory estoppel claim. Promissory estoppel requires that the plaintiff reasonably relied on the alleged promise giving rise to the estoppel. *Castellotti v. Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016). Here, the Agreement provides that it "constitutes the entire agreement between the parties with respect to the subject matter hereof and may only be amended or modified by a written instrument executed by the duly authorized representatives of the parties." This provision and the parties' unambiguous intention for the

6

Agreement to govern their relationship regarding *The Trinity Root* preclude Plaintiff from claiming that he reasonably relied on any oral promise to locate *The Trinity Root* permanently in the churchyard. *See Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 577 (2d Cir. 2010) (summary order) (applying New York law and holding that the plaintiff "could not reasonably have relied on . . . [a] purported oral promise . . . because such a representation modifies the relationship between the parties established by the [written] Agreement, which by its terms can only be done in writing"); *accord Bank of N.Y. v. Spring Glen Assocs.*, 635 N.Y.S.2d 781, 784 (3d Dep't 1995) ("[D]efendants' estoppel argument is unavailing as they could not have justifiably relied on such an [oral] assurance, given the express language in the [contracts] declaring that no modification or waiver of their terms . . . can be brought about except by a signed writing."); *see also Fariello v. Checkmate Holdings, LLC*, 918 N.Y.S.2d 408, 409 (1st Dep't 2011) (holding that the promissory estoppel claim was barred by the merger clause in the agreement between the parties).

Plaintiff is incorrect that Defendant's alleged promise is outside of scope of the Agreement and therefore that the promissory estoppel claim is not barred. The Agreement expressly states what Defendant may do with the sculpture, including sell, loan, exhibit or use it "in any manner." Any added restriction on that use would be squarely within the scope of the Agreement and would vary its terms. *See Kleinberg v. Radian Grp.*, No. 01 Civ. 9295, 2002 WL 31422884, at *5 n.2 (S.D.N.Y. Oct. 29, 2002) (holding that "to add terms to an agreement would clearly vary that agreement's terms, insofar as the terms of the 'supplemented' agreement would no longer be the same as the terms of the written one" (internal quotation marks omitted)). Even if the alleged promise to keep the *The Trinity Root* in the churchyard indefinitely were outside the scope of the Agreement, the promise would be unenforceable. "New York courts have held that

7

an oral agreement for an indefinite obligation is not enforceable." *Komlossy v. Faruqi & Faruqi, LLP*, --- F. App'x. ----, 2017 WL 4679579, at *1 (2d Cir. Oct. 18, 2017) (summary opinion).

### C. The VARA Claims

The Complaint alleges three causes of action under VARA -- two based on Defendant's removing *The Trinity Root* from the courtyard, which allegedly constitutes "an intentional distortion, mutilation and modification of the work," causing injury to Plaintiff's honor and reputation; and one cause of action based on the alleged destruction of *The Trinity Root* because of damage done to it during the relocation. The Complaint alleges a fourth VARA purported claim, which asserts, and seeks a declaratory judgment that Plaintiff did not waive his rights under VARA, an issue that is not in dispute but does not entitle Plaintiff to any independent relief.

"VARA was enacted in 1990 . . . to provide for the protection of the so-called 'moral rights' of certain artists." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). Unless the artist expressly waives them in writing, these statutory rights transcend third-party ownership and contractual rights. *See* 17 U.S.C. § 106A(e)(1); *Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128, 133 (1st Cir. 2006) ("[T]hese moral rights protect what an artist retains after relinquishing ownership . . . of the tangible object that the artist has created."). "VARA provides that the author of a 'work of visual art,' 'shall have the right,' for life,

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

*Pollara*, 344 F.3d at 269 (quoting 17 U.S.C. §§ 106A(a)(3)(A)–(B)). Under subsection (A), "[t]he right of integrity allows the author to prevent any deforming or mutilating changes to his

8

work, even after title in the work has been transferred." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir. 1995) (internal citations omitted). Under subsection (B), in the case of works "of recognized stature," the statute allows the author to prevent destruction of the work. The statute also confers:

> the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation.

17 U.S.C. § 106A(a)(2). Despite the preventative language of § 106A(a), "[a]ll remedies available under copyright law, other than criminal remedies, are available in an action for infringement of moral rights." *Carter*, 71 F.3d at 83 (citing 17 U.S.C. § 506).

An artist's rights under VARA are expressly limited by the following:

> (2) The modification of a work of visual art which is the result of . . . the public presentation, including lighting and placement, of the work is not a destruction, distortion, mutilation, or other modification described in subsection (a)(3) unless the modification is caused by gross negligence.

17 U.S.C. § 106A(c)(2).[1]

### A. Alleged "Distortion, Mutilation or Modification" of the Sculpture

The Complaint alleges that removing *The Trinity Root* from the churchyard constitutes an actionable distortion, mutilation and modification under §§ 106A(a)(2)–(3) because *The Trinity Root* is a site-specific work of art. Site-specific art "incorporates the environment as one of the media with which [the artist] works." *Phillips*, 459 F.3d at 134. For example, a "sculpture [that] has a marine theme that integrates the large granite stones of [a] park with [the] sculpture and the granite sea walls of Boston Harbor" is clearly site-specific art. *Id*.

---

[1] The statute also excludes from the protections of 17 U.S.C. § 106A(a)(2)–(3) art incorporated into a building "in such a way that removing [it] will cause the destruction" of the work as described in §§ 106A(a)(2)–(3) if the author consented to the installation. 17 U.S.C. § 113(d). The statute does not otherwise address site-specific installations.

This claim fails because simply relocating *The Trinity Root* does not by itself constitute distortion, mutilation or modification under VARA. Even assuming that *The Trinity Root* is site-specific art, and that changing its location results in its "modification," that modification "is the result of . . . the public presentation, including . . . placement, of the work" and therefore is not actionable unless the modification is caused by gross negligence. *See* 17 U.S.C. § 106A(c)(2). The legislative history makes clear that "removal of a work from a specific location comes within [this] exclusion because the location is a matter of presentation." H.R. Rep. No. 101-514, at *6927 (1990). Addressing site-specific art and the public presentation exception, the Seventh Circuit stated, "[T]he artist has no cause of action unless through gross negligence the work is modified, distorted, or destroyed in the process of changing its public presentation." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 306–07 (7th Cir. 2011) (dictum); *cf*. *Phillips*, 459 F.3d at 143 (affirming dismissal of a VARA claim challenging removal of a sculptor's site-specific art on the ground that VARA does not apply to site-specific art at all, but rejecting the reasoning that VARA applies to site-specific art and that removal of the sculptor's work was not actionable under VARA's public presentation exception).

The VARA claims based on Defendant's relocating *The Trinity Root* fail because the Complaint does not plead sufficient facts to support an inference of gross negligence, which is required to overcome the public presentation exception. 17 U.S.C. § 106A(c)(2). To satisfy the "gross negligence" standard, a plaintiff must plead facts suggesting "[a] conscious, voluntary act or omission in reckless disregard of a legal duty and the consequences to another party . . . ." *Gross Negligence*, Black's Law Dictionary (10th ed. 2014). The Complaint alleges -- in conclusory fashion -- gross negligence and damage to the "physical and aesthetic integrity" of the artwork. The Complaint fails to plead facts showing reckless disregard for Plaintiff's rights. The

Complaint describes Defendant's offer to return the sculpture to Plaintiff, and Plaintiff's warning to Defendant that the sculpture could be destroyed structurally if it were cut into pieces or lifted incorrectly. The Complaint further alleges that Defendant moved the sculpture twice, and two attached photographs show several roots that allegedly were broken off in the moving process. The Complaint also quotes Defendant's statement that the sculpture suffered "some minor, reparable damage" and includes Plaintiff's characterization of the damage as "substantial." These allegations are insufficient to plead gross negligence and overcome the public presentation exclusion to a claim based on the relocation of the sculpture. *See, e.g.*, *English v. BFC & R E. 11th St. LLC*, No. 97 Civ. 7446, 1997 WL 746444, at *5 (S.D.N.Y. Dec. 3, 1997) (holding that the removal of plaintiff's sculptures would not violate VARA because "[r]emoving the individual sculptures does not in and of itself constitute mutilation or destruction"), *aff'd sub nom. English v. BFC Partners*, 198 F.3d 233 (2d Cir. 1999). Accordingly, the VARA claims under §§ 106A(a)(2) and (3)(A) are dismissed.

### B. Alleged Destruction of the Sculpture

The Complaint also fails to plead sufficient facts to support an inference that Defendant's conduct caused *The Trinity Root*'s physical "destruction." To the contrary, the Complaint alleges that Defendant's conduct merely "damaged" the sculpture (*e.g.*, "Mr. Brockman . . . revealed to Tobin that the sculpture had been damaged; "[T]he Church confirmed that what it termed 'some minor, reparable damage,' 'did occur'"; Defendant would permit Plaintiff to repair the statute at Plaintiff's expense). These allegations of damage are insufficient to support a claim of destruction under § 106A(a)(3)(B) of VARA. *See, e.g.*, *Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 534–35 (S.D.N.Y. 2001) (rejecting the complaint's argument that the head of a sculpture was destroyed within the meaning of VARA because "the complaint and

11

photographs of the head annexed to it unambiguously show that although the face was damaged, the head has not been destroyed and is capable of being repaired"). The Complaint's claim for injunctive relief requiring Defendant to return *The Trinity Root* to the churchyard likewise undermines the Complaint's allegation that Defendant caused *The Trinity Root*'s destruction because such relief presupposes that *The Trinity Root* has not been destroyed.

Plaintiff's attempt to distinguish *Flack v. Friends of Queen Catherine Inc.* is unpersuasive. 139 F. Supp. 2d at 534. There, plaintiff alleged partial destruction of the head of a 35-foot clay sculpture due to defendant's allegedly placing it in a garbage dump, where it was "[e]xposed to the elements" and ultimately damaged. Although the court noted that "VARA does not provide a means of enjoining or obtaining damages due to modifications resulting from 'the passage of time or the inherent nature of the materials,'" it also expressly rejected plaintiff's argument that the head was "destroyed" through defendant's gross negligence. *Id.* at 534. The court found that "[t]he complaint and the photographs of the head annexed to it unambiguously show that although the face was damaged, the head has not been destroyed and is capable of being repaired," and accordingly, dismissed the partial destruction claim under VARA. *Id.*

As the Complaint does not allege any facts suggesting that *The Trinity Root* was destroyed within the meaning of the statute, the VARA claim is dismissed. Because the VARA claims are dismissed, the cause of action seeking a declaratory judgment that Plaintiff has not waived his rights under VARA with respect to *The Trinity Root* is dismissed as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED. The parties' joint applications for oral argument and a stay of fact

witness depositions and expert discovery are denied as moot. The Clerk of Court is directed to close the motions at Docket Nos. 23 and 33 and close the case.

SO ORDERED.

Dated: November 14, 2017
       New York, New York

                                        **LORNA G. SCHOFIELD**
                                     **UNITED STATES DISTRICT JUDGE**